UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY C., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 20 CV 3861 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mary C. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, plaintiff's request to reverse and remand the SSA's decision [14][2] is granted, defendant's motion for summary judgment [18] is denied, and this case is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

**A.    Procedural Background**

On August 16, 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. [13-1] 14; [13-2] 261–69. In both applications, plaintiff alleged a disability onset date of April 15, 2017, based on the following alleged impairments: achondroplasia dwarfism, PTSD, depression, panic attacks, arthritis, chronic pain, chronic fatigue, and a floating right eye. [13-1] 119, 131, 145, 159. Plaintiff's claims were denied initially on December 1, 2017, and upon reconsideration on March 22, 2018. [13-2] 178, 189.

Plaintiff requested a hearing, which was held before an administrative law judge (ALJ) on March 29, 2019. [13-1] 14, 67–117. In a decision dated April 19, 2019, the ALJ found that plaintiff was not disabled and denied her applications. [*Id.*] 14–

---

[1] Martin J. O'Malley was sworn in as the Commissioner of Social Security Administration on December 20, 2023.
[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13], which refer to the page numbers in the bottom right corner of each page.

29. The Appeals Council denied review on May 4, 2020, rendering the ALJ's decision the final decision of the Commissioner. [*Id.*] 1–4. *See* 20 C.F.R. §§ 404.955, 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[3]

### B. The ALJ's Decision

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 15, 2017, the alleged onset date. [13-1] 17. At step two, the ALJ found that plaintiff had the following severe impairments: osteoarthritis due to achondroplasia, T-11 vertebral wedging, De Quervain's tenosynovitis of the left wrist, and sphenoid sinusitis. [*Id.*] The ALJ found that plaintiff's obesity, gastrointestinal reflux disease, leg length discrepancy, depressive disorder, and anxiety disorder were non-severe impairments. [*Id.*] 17–21. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*] 22. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity (RFC) to perform light work, except plaintiff can only occasionally crouch, kneel, crawl, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; can frequently reach overhead bilaterally and frequently handle and finger with the left upper extremity; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive noise of more than moderate intensity, excessive vibration, environmental irritants, fumes, odors, dusts, gases, poorly ventilated areas, chemicals, using hazardous machinery, and unprotected heights. [*Id.*] 22–28. At step four, the ALJ concluded that plaintiff can perform her past relevant work as a telephone solicitor and customer service clerk, both as generally and actually performed. [*Id.*] 28. The ALJ found that this work does not require the performance of work-related activities precluded by plaintiff's RFC. [*Id.*] The ALJ therefore ended the analysis and did not proceed to step five.

### Legal Standard

To be entitled to benefits under the Social Security Act, a claimant must be "aged, blind, or disabled." 42 U.S.C. § 1382(a)(1). The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* at § 1382c(a)(3)(A).

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [8].

In evaluating a claim for disability benefits, ALJs follow a five-step, sequential process. *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020). The ALJ must evaluate the following:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] …; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (alterations in original) (quoting *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)). *See also* 20 C.F.R. § 404.1520. "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868. The claimant bears the burden of proof at steps one through four. *Fetting*, 62 F.4th at 336 (citing *Clifford*, 227 F.3d at 868). "At step five, the burden shifts to the agency to show that 'there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations.'" *Id.* at 336–37 (quoting *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)).

When the Appeals Council denies a plaintiff's request for review, the ALJ's decision constitutes the final decision of the Commissioner. *Gedatus*, 994 F.3d at 898. Section 405(g) of Title 42 limits the court's review; the district court must uphold the decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Failure to follow the Social Security Administration's rulings and regulations in making a determination requires reversal unless the error is harmless. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). A reviewing court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons. First, plaintiff asserts that the Appeals Council erred in its review of plaintiff's case by declining to remand in light of new and material evidence because there was a reasonable probability that this evidence would change the outcome of the ALJ's decision. [15] 9–11. Second, plaintiff asserts that the ALJ erred in his subjective symptom analysis and did not properly assess the intensity and limiting

3

effect of plaintiff's symptoms. [*Id.*] 11–13. Third, plaintiff argues the ALJ erred in his assessment of plaintiff's mental impairments when crafting the RFC by failing to incorporate limitations related to plaintiff's panic attacks, stress, and concentration. [*Id.*] 13–15.

For the reasons set forth below, the Court agrees that the Appeals Council erred when it ignored the additional evidence presented in the report of Dr. Peter Meier, Jr., in its decision to reject plaintiff's appeal of the ALJ's decision. Accordingly, the Court will remand this case for further administrative proceedings.[4]

### A. The Court Has Jurisdiction to Review the Appeals Council's Rejection of Additional Evidence

Plaintiff asserts that the Appeals Council erred by failing to remand this case to the ALJ in light of the "new and material evidence" provided by Dr. Meier's October 7, 2019 opinion. [15] 9. As plaintiff summarizes, Dr. Meier determined that due to the pain associated with plaintiff's "widespread severe osteoarthritis with achondroplasia," plaintiff "could combined stand/walk for less than 2 hours in a work day, she would require numerous unscheduled breaks, and she would be absent from work '4+ times per month.'" [*Id.*] (citing [13-1] 8–10). Plaintiff argues that there is a reasonable probability that Dr. Meier's opinion would change the decision and that Dr. Meier's opinion warrants "considerable weight" in light of his extensive specialized and longitudinal treating relationship with plaintiff. [*Id.*] 10–11.

The Commissioner argues that the Appeals Council's decision is not reviewable by this Court. [19] 11 (citing *Barbara H. v. Saul*, No. 19 CV 50011, 2020 WL 3469163, at *5 (N.D. Ill. June 25, 2020)). According to the Commissioner, longstanding Seventh Circuit precedent establishes that the Appeals Council's judgment on whether additional evidence warrants review is "discretionary and unreviewable." [*Id.*] 11–12 (citing *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997); *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993); *Damato v. Sullivan*, 945 F.2d 982 (7th Cir. 1991)). Importantly, the Commissioner "concedes that the opinion from Dr. Meier was new, material, and related to the period on or before the date of the ALJ's decision." [*Id.*] 12. But the Commissioner asserts this "does not matter" because the Appeals Council "reviewed the substance of the opinion and concluded that it did 'not show a reasonable probability that it would change the outcome of the decision.'" [*Id.*] (quoting [13-1] 1–2). According to the Commissioner, this "language is the death knell for plaintiff's argument" because it "signals that the Appeals Council made a discretionary decision that is not subject to review." [*Id.*]

In her reply brief, plaintiff asserts that the Court does retain jurisdiction to review whether the Appeals Council made an error of law in finding the evidence nonqualifying under the regulation. [20] 2. Plaintiff provides no further argument on

---

[4] Because this issue is dispositive, the Court need not address plaintiff's other arguments for remand.

4

reviewability but relies on and likens her case to *Farrell v. Astrue*: "In *Farrell*, the Court found the Appeals Council's determination that Farrell's evidence was nonqualifying to be erroneous because her doctor's medical records included information new to the administrative record and the ALJ's opinion rested on facts contradictory to that included in the new medical records." [*Id.*] (citing 692 F.3d 767, 771 (7th Cir. 2012)).

The Social Security regulation governing this case[5] provides that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). *See* [13-1] 1–2 ("We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision.").

The Court's ability to review the Appeals Council's decision "is dependent on the grounds on which the Council declined to grant plenary review." *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015).[6] "If the Council determined [plaintiff's] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence 'non-qualifying under the regulation,' [courts] retain jurisdiction to review that conclusion for legal error." *Id.* (citing *Farrell*, 692 F.3d at 771; *Eads*, 983 F.2d at 817 (explaining that if the Council's decision not to review a case "rests on a mistake of law, such as the determination ... that the evidence newly submitted to the Appeals Council was not material to the disability determination, the court can reverse")). "However, if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—d[id] not demonstrate that the ALJ's decision was 'contrary to the weight of the evidence'—the Council's decision not to engage in plenary review is 'discretionary and unreviewable.'" *Id.* (quoting *Perkins*, 107 F.3d at 1294).

In its review of the ALJ's decision, the Appeals Council acknowledged that plaintiff submitted additional evidence, namely, the treating source statement from Dr. Meier dated October 7, 2019.[7] [13-1] 2. The Appeals Council stated that it found

---

[5] The regulation was amended effective January 17, 2017, and enforceable as of May 1, 2017. As plaintiff filed her claims on August 16, 2017, the revised regulation is applicable.

[6] Plaintiff's argument does not constitute a request for remand under sentence six of 42 U.S.C. § 405(g) because evidence that was presented to the Appeals Council is not "new" for purposes of sentence six. *Stepp*, 795 F.3d at 726 n.8; *DeGrazio v. Colvin*, 558 F. App'x 649, 652 (7th Cir. 2014); *Farrell*, 692 F.3d at 770.

[7] The Appeals Council also acknowledged that plaintiff submitted records from Cathy "Rank," PAC, dated July 15, 2019, as additional evidence, which the Appeals Council found did "not relate to the period at issue." [13-1] 2. However, aside from briefly referring to findings from PAC Cathy "Renk" in

5

"this evidence [did] not show a reasonable probability that it would change the outcome of the decision" and thus "did not exhibit this evidence." [*Id.*] This is all the Appeals Council wrote on the matter; the Appeals Council provided no additional explanation of its reasoning or discussion of the report's contents.

The Appeals Council makes use of this vague, boilerplate language quite frequently. *See, e.g.*, *Cavaricci J. v. Kijakazi*, No. 19-cv-0162, 2022 WL 1016406, at *3 (N.D. Ill. Apr. 5, 2022); *Barbara H.*, 2020 WL 3469163, at *5; *Colleen C. o/b/o Daniel I. v. Saul*, No. 18 C 1838, 2019 WL 3986077, at *2 (N.D. Ill. Aug. 23, 2019).[8] Such language can make it difficult to evaluate the Appeals Council's reasoning in rejecting additional evidence. *See Stepp*, 795 F.3d at 725 (referring to the "minimal information provided by the Appeals Council" and its "abstruse signals"); *Farrell*, 692 F.3d at 771 (noting the Appeals Council's decision was "not as clear as it might be" and collecting cases reflecting the ambiguity of the Appeals Council's decisions); *Musonera v. Saul*, 410 F. Supp. 3d 1055, 1059 (E.D. Wis. 2019) ("Further complicating matters, the AC frequently uses opaque language, which makes it difficult for the court to determine the basis for its decision."). And as other courts have observed, at the time that cases like *Stepp* and *Farrell* were decided, the regulation did not include the "reasonable probability" provision, which has created some confusion and disagreement over whether such a finding is a legal determination that the evidence is "non-qualifying under the regulation" or a discretionary weighing of the evidence. *See, e.g.*, *Rita Mary K. v. Kijakazi*, 2022 WL 17583780, at *4 n.4 (N.D. Ill. Dec. 12, 2022); *Barbara H.*, 2020 WL 3469163, at *5; *Davis v. Comm'r of Soc. Sec.*, No. 3:20-CV-303, 2021 WL 2451908, at *2 (N.D. Ind. June 16, 2021); *Musonera*, 410 F. Supp. 3d at 1059–61; *Steven D. A. v. Comm'r of Soc. Sec.*, No. 17-cv-819, 2018 WL 3438856, at *6–7 (S.D. Ill. July 17, 2018). *See also* [19] 13 n.6 (Commissioner's brief pointing out that the Agency revised the regulation in 2017 and earlier decisions "such as *Stepp* address the rule when it had slightly different language"). A legal determination of materiality is reviewable by this Court; a discretionary weighing of the evidence is not. *Stepp*, 795 F.3d at 722.

Plaintiff argues that cases discussing the previous version of § 404.970 "appear to still be applicable under the current version of the regulation." [20] 2 (quoting *Steven D. A.*, 2018 WL 3438856, at *7). "The new regulation does not make a substantive change, but simply incorporates the Seventh Circuit's understanding of

---

her statement of facts, [13-1] 5–6, plaintiff does not challenge the Appeals Council's rejection of this evidence.

[8] *See also Lisa F. v. Comm'r of Soc. Sec.*, No. 4:21-cv-04005, 2022 WL 20689734, at *3 (C.D. Ill. Sept. 15, 2022); *Davis v. Comm'r of Soc. Sec.*, No. 3:20-CV-303, 2021 WL 2451908, at *2 (N.D. Ind. June 16, 2021); *Tina C. v. Saul*, No. 3:20-cv-308, 2021 WL 1851655, at *4 (N.D. Ind. May 10, 2021); *Musonera v. Saul*, 410 F.Supp.3d 1055, 1058 (E.D. Wis. 2019); *Jandt v. Saul*, No. 18-C-737, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019); *Teresa F. v. Saul*, No. 1:18-cv-01967, 2019 WL 2949910, at *6 (S.D. Ind. July 9, 2019); *Ford v. Berryhill*, 17-cv-544-wmc, 2019 WL 11594537, at *6 (W.D. Wis. June 4, 2019); *Steven D. A. v. Comm'r of Soc. Sec.*, No. 17-cv-819, 2018 WL 3438856, at *7 (S.D. Ill. July 17, 2018).

6

materiality, i.e., the additional evidence would be likely to change the outcome of the decision." *Steven D. A.*, 2018 WL 3438856, at *7. In other words, "[t]he second clause ('there is a reasonable probability that the additional evidence would change the outcome of the decision') basically restates the definition of the term 'material' which appears in the first clause." *Musonera*, 410 F. Supp. 3d at 1060. "As applied, there is no substantive difference between those separate requirements." *Teresa F. v. Saul*, No. 1:18-cv-01967, 2019 WL 2949910, at *9 (S.D. Ind. July 9, 2019).[9]

The majority of district courts in this circuit have concluded that the exact language used by the Appeals Council in the instant case "amounted to a rejection of the additional evidence as non-qualifying." *Cavaricci J.*, 2022 WL 1016406, at *3 (collecting cases). *See also Lisa F.*, 2022 WL 20689734, at *3 ("In other words, the AC deemed that evidence non-qualifying under 20 C.F.R. § 404.970(a)(5), and so this Court may review that conclusion for legal error."); *Davis*, 2021 WL 2451908, at *2, 5 ("In light of the ambiguity and consistent with *Stepp* and *Farrell*, the Court interprets the denial notice as meaning that the Appeals Council found the additional evidence to be non-qualifying under the regulations, and as such the Appeals Council did not adequately assess whether it was sufficient to require a different result."); *Tina C. v. Saul*, No. 3:20-CV-308, 2021 WL 1851655, at *4 (N.D. Ind. May 10, 2021) ("Here, the Council used the same boilerplate language that the Seventh Circuit found insufficient. . . . Therefore, this court will interpret the boilerplate language as a rejection of the additional evidence as non-qualifying under the regulation."); *Colleen C. o/b/o Daniel I.*, 2019 WL 3986077, at *2–3 (involving identical boilerplate language and reviewing whether the Appeals Council's decision was erroneous); *Potocki o/b/o Potocki v. Berryhill*, No. 16 C 7264, 2017 WL 3995816, at *6–7 (N.D. Ill. Sept. 11, 2017) (reviewing the Appeals Council's finding for legal error where the Appeals Council used boilerplate language and "did not evaluate or provide an analysis of the content of the new records").

Other judges have disagreed, finding that such language does not allow courts to review the Appeals Council's decision. *Barbara H.*, 2020 WL 3469163, at *6; *Jandt v. Saul*, No. 18-C-737, 2019 WL 4464763, at *4–5 (E.D. Wis. Sept. 18, 2019). But the Court agrees with the majority of district courts in this circuit and concludes that the Appeals Council's finding that additional evidence did "not show a reasonable probability that it would change the outcome of the decision" constitutes a rejection of the evidence as non-qualifying under the regulation. Therefore, the Court has jurisdiction to review the Appeals Council's conclusion for legal error.

---

[9] *See Lisa F.*, 2022 WL 20689734, at *3 ("Here, the AC clearly stated, albeit with different wording, that Dr. Pla's and Dr. Jager's narrative statements were not material."); *Musonera*, 410 F. Supp. 3d at 1061 ("First, allowing review in close cases, such as this one, is consistent with the general principles set forth by the Seventh Circuit. Second, the language of the order at issue here, while ambiguous, supports review."); *Teresa F.*, 2019 WL 2949910, at *9 ("Accordingly, the Court declines to avoid— based on a lack of jurisdiction—an evaluation of whether the newly submitted evidence would have had a reasonable probability of changing the outcome of the decision.").

### B. The Appeals Council Erred in Rejecting Dr. Meier's Report

As noted, the Commissioner relies only on the argument that the Court does not have discretion to review the Appeals Council's decision, conceding that Dr. Meier's opinion "was new, material, and related to the period on or before the date of the ALJ's decision." [19] 12. Now that the Court has concluded that the Appeals Council's decision is reviewable, this concession could end the decision here. Nevertheless, in the interest of completeness, the Court provides a brief analysis of Dr. Meier's report under the regulation. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). The Court reviews the Appeals Council's rejection of the additional evidence *de novo*. *See Stepp*, 795 F.3d at 725; *Farrell*, 692 F.3d at 771; *Rita Mary K.*, 2022 WL 17583780, at *5; *Tina C.*, 2021 WL 1851655, at *4. *See also Perkins*, 107 F.3d at 1294 (holding that "review of the question whether the [Appeals] Council made an error of law in applying this regulation is *de novo*"); *Davis*, 2021 WL 2451908, at *4 ("If the Appeals Council denies review because new evidence is 'non-qualifying under the regulation,' the Court conducts a *de novo* review of whether the evidence was relevant under the regulations.").

The Court finds that Dr. Meier's report is clearly "new" within the meaning of the regulation. "Records are 'new' if they were 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Potocki o/b/o Potocki*, 2017 WL 3995816, at *7 (quoting *Stepp*, 795 F.3d at 275). Dr. Meier's "General Medical Source Statement" is dated October 7, 2019, which places it after the March 29, 2019 hearing, [13-1] 67, and the ALJ's April 19, 2019 decision, [*id.*] 29. Dr. Meier's statement indicates that he last saw plaintiff on July 15, 2019, which also postdates the end of the adjudicative period. [*Id.*] 8.[10]

"Evidence is 'material' if 'there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered.'" *Cavaricci J.*, 2022 WL 1016406, at *4 (quoting *Similia v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). *See also Stepp*, 795 F.3d at 275; *Perkins*, 107 F.3d at 1296. Plaintiff argues that Dr. Meier's report is material because the ALJ's decision rested on his conclusion that plaintiff could meet the demands of light work, which includes the ability to be on her feet for six hours[11] of the workday. [15] 9 (citing [13-1] 22; SSR 96-8p). Plaintiff

---

[10] The Court notes that the regulation also states that the Appeals Council will only consider additional evidence if the claimant can "show good cause for not informing [the Social Security Administration] about or submitting the evidence" earlier. 20 C.F.R. §§ 404.970(b), 416.1470(b). Neither plaintiff nor the Commissioner provides any argument (or concession) on this point, and the Appeals Council did not mention it in its decision. Although there is not enough information in the record for the Court to determine whether plaintiff showed good cause for not submitting the evidence earlier, skipping this step would nevertheless constitute another error by the Appeals Council requiring remand.

[11] The ALJ's decision, including the RFC assessment, did not specifically conclude that plaintiff is capable of being on her feet for six hours. Nor does a finding that an individual is capable of performing light work equate to the ability to be on his or her feet for six hours of an eight-hour workday. Rather, the regulations' definition of "light work" includes jobs that "require[] a good deal of walking or

8

asserts there is a reasonable probability that Dr. Meier's report would change the decision because Dr. Meier's opinion that plaintiff's osteoarthritis prevents her from standing/walking for even two hours in an eight-hour workday is in direct opposition to the ALJ's RFC assessment. [*Id.*] 10. Plaintiff also argues that Dr. Meier's opinion has a reasonable probability of changing the outcome of the ALJ's decision given Dr. Meier's "nuanced, longitudinal perspective" of plaintiff's conditions and the "degenerative progression of her impairments." [*Id.*] 10–11 (citing [13-1] 35; [13-3] 715–17, 892–95, 888–89)). And plaintiff asserts that considering Dr. Meier's report may change the ALJ's conclusion regarding plaintiff's reliability and her subjective complaints of disabling pain. [*Id.*] 11.

Dr. Meier is an orthopedic surgeon who performed plaintiff's hip replacement in April 2009. [15] 5 (citing [13-3] 888). Plaintiff returned to Dr. Meier beginning on February 21, 2018, for treatment for her osteoarthritis and associated pain. [*Id.*]; [13-1] 8, 35–36; [13-3] 715–16, 888–95. More specifically, Dr. Meier's report listed the following conditions for which he was treating plaintiff: achondroplasia, severe right hip osteoarthritis, severe right knee osteoarthritis, bilateral shoulder AC osteoarthritis, and glenohumeral osteoarthritis. [*Id.*] In the subject report, Dr. Meier rated plaintiff's prognosis "poor." [*Id.*] Dr. Meier's report estimated that plaintiff would be likely to miss work over four times per month due to symptoms related to her physical impairments. [*Id.*] 9. Dr. Meier also opined that in an eight-hour workday, plaintiff would require breaks or rest periods in addition to the standard two breaks and lunch break. [*Id.*] And Dr. Meier wrote that plaintiff would require "numerous" breaks. [*Id.*] Finally, in opining on plaintiff's capacity for competitive employment on an eight-hour per day, five-day per week basis, Dr. Meier checked the option stating that "[s]ymptoms will interfere to the extent that the patient is unable to maintain persistence and pace to engage in competitive employment." [*Id.*] 8.

There is a reasonable probability that the ALJ would have reached a different conclusion if he had considered Dr. Meier's report.

The ALJ's decision acknowledged that plaintiff's "own treating providers expressed no opinion on [plaintiff's] work related capacities[.]" [13-1] 27. The ALJ therefore considered and relied on the state agency consultants' opinions limiting plaintiff to light work with certain additional limitations (including the ALJ's added manipulative limitations). [*Id.*] But Dr. Meier's report opined that plaintiff is incapable of light, or even sedentary, work. In stark contrast to the state agency consultants' opinions, Dr. Meier's report indicated that plaintiff's symptoms render her unable to engage in competitive employment, unable to sit for more than four hours, and unable to stand/walk for more than two hours. [*Id.*] 8–9. This information in Dr. Meier's report may also reasonably change the ALJ's subjective symptom analysis, as the ALJ questioned plaintiff's testimony and found that plaintiff's

---

standing[.]" 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Meier's opinion is nevertheless directly at odds with the ALJ's finding that plaintiff is capable of performing light work.

symptoms were not as disabling as she alleged. [*Id.*] 24–26. However, Dr. Meier's report lends support to plaintiff's testimony that her pain is constant and severe.

Furthermore, the ALJ ended the analysis at step four after finding that plaintiff was capable of performing past relevant work as a telephone solicitor and customer service clerk, which the ALJ based in part on the VE's hearing testimony. [13-1] 28. However, Dr. Meier's opinions as to the number of days per month that plaintiff would be absent and the additional breaks she would require due to symptoms related to her physical impairments could reasonably impact this finding. As demonstrated by the line of questioning plaintiff's attorney posed to the VE regarding off-task and absenteeism restrictions, presenting a hypothetical individual with the limitations Dr. Meier's report includes would greatly change the VE's testimony:

> Q. Okay. If an individual would be off task, say 16% of an 8-hour workday, would any job be available?
>
> A. No. For the jobs I cited, 10% of the time is the maximum allowed to be off-task. There would be no jobs.
>
> Q. Okay. So actually, even if a person was off-task 11% of an 8-hour workday, there would be no job available?
>
> A. No jobs, counsel.
>
> Q. Okay. If an individual would have 2 unexcused absences a month on average, would any job be available?
>
> A. No jobs would be available. For the jobs that I cited, 6 to 8 days per year is the maximum tolerated by employers for unexcused absences. That means coming in late, showing up but leaving early, calling off, or not showing up at all.

[13-1] 116.

The Court finds that Dr. Meier's report was new and material and that there is a reasonable probability that this evidence could change the outcome of the ALJ's decision. Accordingly, the Court concludes that the Appeals Council committed legal error by ignoring Dr. Meier's report in its decision to reject plaintiff's appeal.

"But administrative error may be harmless: [courts] will not remand a case to the ALJ for further specification where . . . convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). *See Wilder v. Kijakazi*, 22 F.4th 644, 654

10

(7th Cir. 2022) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'") (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)).[12] "An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Wilder*, 22 F.4th at 654 (quoting *Butler*, 4 F.4th at 504).

The Court cannot find that this error was harmless. Specifically, the Court cannot predict with great confidence the effect Dr. Meier's opinions on plaintiff's absenteeism and required breaks would have on the ALJ's finding that plaintiff is capable of performing past relevant work, particularly in light of the VE's testimony that such restrictions would preclude an individual from employment. Furthermore, the ALJ acknowledged that plaintiff's "own treating providers expressed no opinion on [plaintiff's] work related capacities" and thus relied on the opinions of the state agency medical consultants. [13-1] 27. The Court cannot assume or predict how the ALJ would evaluate additional medical opinion evidence and factor it into his RFC assessment, particularly where Dr. Meier's opinion differs greatly from those of the state agency consultants.

Given that the information in Dr. Meier's report was not before the ALJ, that Dr. Meier's opinions contradict the state agency consultants' opinions, and that the VE testified that such levels of absenteeism and time off-task would preclude employment, the Court cannot "predict with great confidence what the result on remand" would be such that any error is harmless.

The Court remands the case to the ALJ to re-evaluate plaintiff's RFC in light of the information presented in Dr. Meier's October 7, 2019 report.

---

[12] In evaluating whether the Appeals Council erred, case law is inconsistent on applying the harmless error analysis. Some courts considered whether the error was harmless. *Farrell*, 692 F.3d at 772 ("This error was not harmless."); *Rita Mary K.*, 2022 WL 17583780, at *5 ("Moreover, the error was not harmless with regard to the Appeals Council's rejection of the post-decision opinions."); *Musonera*, 410 F. Supp. 3d at 1065–66 ("I cannot assume that the ALJ would have reached the same result had he considered the additional evidence."); *Nobles v. Colvin*, 15-cv-1-RLY-WGH, 2015 WL 13741211, at *5 (S.D. Ind. Oct. 27, 2015). Other courts skipped this step. *Stepp*, 795 F.3d at 725–26; *Lisa F.*, 2022 WL 20689734, at *4; *Cavaricci J.*, 2022 WL 1016406, at *4; *Potocki o/b/o Potocki*, 2017 WL 3995816, at * 7–8.

11

## Conclusion

For the foregoing reasons, plaintiff's request to reverse and remand the SSA's decision [14] is granted and defendant's motion for summary judgment [18] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 21, 2024**